**Willie R. ANDERSON,
Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, Secretary of the
Department of Health and Human
Services, Defendant–Appellee.**

**No. 90–2344.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 19, 1990.

Decided Feb. 19, 1991.

Thomas M. Henry, Peoria, Ill., for plaintiff-appellant.

John L. Martin, Dept. of Health and Human Services, Region V, Office of the Gen. Counsel, Chicago, Ill., K. Tate Chambers, Asst. U.S. Atty., Office of the U.S. Atty., Peoria, Ill., for defendant-appellee.

Before POSNER, COFFEY, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Plaintiff Willie Anderson appeals from a summary judgment for defendant, the Secretary of Health and Human Services. On appeal, Mr. Anderson contends that there was not substantial evidence in the record to support the administrative law judge's decision to deny his application for disability benefits as of September 30, 1980, the date his insured status expired. We affirm.

# I

## FACTS

Mr. Anderson was born in 1951 and attended school until the eighth grade when he was expelled for fighting. He went on to the Job Corps, where he obtained a high school equivalency diploma. In 1968, he joined the United States Marine Corps. He was discharged after one month because of nervousness. At the age of nineteen, he shot himself in the arm; at the age of twenty-three, he tried to commit suicide by slitting his wrists.

Mr. Anderson held various jobs before becoming a "scrap man" in 1976 for Keystone Steel and Wire Company (Keystone) in Peoria, Illinois. He earned $10 per hour working eight hours a day, six days a week, and lifting between fifty and one hundred pounds. He worked at Keystone for three years until April 1979 when he was terminated for excessive absenteeism. He then spent short unsuccessful stints working as a gas station attendant, a janitor, and as a parts stripper for a used auto parts company.

On September 19, 1980, two weeks before his insured status expired, Mr. Anderson was admitted to St. Francis Hospital in Peoria for nervousness. The treating physician, Dr. Larry Jennings, noted at the time that Mr. Anderson's mental status was good, and that his nervousness was probably related to situational anxiety. In other words, Dr. Jennings explained, Mr. Anderson had a short temper. Dr. Jennings was doubtful that Mr. Anderson was manic depressive because he did not have prolonged episodes of mania followed by depression. Mr. Anderson was released after several days. For outpatient therapy, Dr. Jennings prescribed valium for one month at bedtime.

Dr. Marvin Ziporyn reviewed Mr. Anderson's medical records in 1987. He found that, as of September 30, 1980, Mr. Anderson exhibited the "A" criteria for the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.08 of the listings regarding personality disorders, but that Mr. Anderson did not exhibit functional restrictions of sufficient severity to satisfy the "B" criteria. Dr. Ziporyn also stated that Mr. Anderson's mental residual functional capacity as of 1980 was no more than moderately limited in any category, and Mr. Anderson was capable of carrying out simple, unskilled work under normal supervision.

In 1988, after a hearing before the ALJ, psychologist Arthur Krasner examined Mr. Anderson and found that there was no clear-cut factual evidence regarding the length of his mental condition. Krasner stated that Mr. Anderson's attempt at suicide and a shooting incident were evidence of a longstanding condition, but that no concrete medical evidence backed-up Mr. Anderson's story.

Also in 1988, Dr. Donald Hurd administered the verbal portion of the Wechsler Adult Intelligence Scale–Revised test on which Mr. Anderson scored a verbal intelligence quotient of 71, which is lower borderline mentally retarded. Dr. Hurd stated that this measure probably reflected Mr. Anderson's true level of capability. The clinical scales on the Minnesota Multiphasic Personality Inventory were elevated and showed an attempt to exaggerate symptoms. He called Mr. Anderson an extremely self-centered man who had intense feelings of inadequacy, apathy, withdrawal, and moodiness.

# II

## ADMINISTRATIVE AND DISTRICT COURT PROCEEDINGS

Mr. Anderson filed applications for both supplemental security income and for disability insurance benefits. The ALJ went through the five-step analysis prescribed by 20 C.F.R. §§ 404.1520, 416.920; *Kapusta v. Sullivan*, 900 F.2d 94, 95 (7th Cir. 1989) (the standards for these two benefits are identical). The ALJ found that Mr. Anderson was not employed at the time of the hearing, and that he suffered from a severe impairment. The ALJ found that Mr. Anderson's schizophrenia met the severity of impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1, Reg. No. 4, and that

disability was established for supplemental security income benefits as of April 21, 1987. The ALJ also found that this impairment did not exist before September 30, 1980 for purposes of disability insurance benefits. The ALJ stated that the evidence prior to 1980 showed Mr. Anderson's having problems with nervousness and short temper, but not having any specific mental disorder. Next, the ALJ considered whether Mr. Anderson retained the residual functional capacity to perform his past relevant work before September 30, 1980, and concluded that Mr. Anderson's past work as a janitor did not require any duties prohibited by his impairments at that time.

Mr. Anderson filed exceptions with the Appeals Council to the ALJ's recommended decision and introduced additional evidence including the reports from Krasner and Dr. Hurd, but the Appeals Council rejected Mr. Anderson's contentions. Mr. Anderson then appealed the Secretary's denial of benefits to the district court. The court granted the Secretary's motion for summary judgment.

## III

### ANALYSIS

This court must affirm the final decision of the Secretary if that decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Kapusta,* 900 F.2d at 96. Substantial evidence has been described as being more than a scintilla. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* This court does not reweigh the evidence, *Pugh v. Bowen,* 870 F.2d 1271, 1274 (7th Cir.1989), nor does it reconsider credibility determinations made by the ALJ. *Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.), *cert. denied,* 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986).

Mr. Anderson's principal contention on appeal is that the Secretary failed to give full consideration to the medical evidence regarding Mr. Anderson's mental disability which post-dated the insured period. Although evidence of the claimant's condition during the post-insured period is relevant, *Ray v. Bowen,* 843 F.2d 998, 1005 (7th Cir.1988), the record in this case also contains strong contemporaneous medical evidence from his 1980 hospitalization that supports the ALJ's conclusion that he was not mentally disabled at that time. The Secretary was entitled to give more weight to this contemporaneous medical evidence than to medical opinions based on six or seven years of hindsight. The opinion of Dr. Jennings, the treating physician in 1980, at best gives lukewarm support to Mr. Anderson's claim of disability. Dr. Jennings diagnosed nervousness, not schizophrenia or a personality disorder, and did not see fit to require further psychological testing or counseling. Dr. Jennings also rejected the possibility of manic depression and concluded that most of Mr. Anderson's difficulties were caused by his short temper. The ALJ was entitled to give substantial weight to this treating physician's contemporaneous report.

The personnel records from Mr. Anderson's employer, Keystone, the other contemporaneous evidence, fail to support Mr. Anderson's position. Regarding the reason for his 1979 firing from Keystone, Mr. Anderson testified at the hearing before the ALJ that he was fired because of nervousness, absenteeism, problems gripping with his left hand, pain in his shoulders, problems hearing, and a tendency towards violence. Personnel records from Keystone reveal that Mr. Anderson was fired for one reason, chronic absenteeism. The file also contained a supervisor's reports of drunkenness on the job.

The Appeals Council also considered all the post-insured evidence that Mr. Anderson presented on the longstanding nature of his mental disability. Regarding Krasner's report that Mr. Anderson submitted pending administrative appeal, the Appeals Council concluded that it did not provide objective clinical evidence that Mr. Anderson's impairments predated September 30, 1980. Krasner's report stated that "there is no clear[-]cut, factual evidence as to how longstanding his (the claimant's)

condition has been except his own reporting." He also stated that "there is no concrete evidence to back up [Anderson's] reporting." Krasner concluded that Mr. Anderson has a long term disorder, but acknowledged that this opinion is "purely subjective." Krasner equivocated in rendering his professional opinion and the Appeals Council was entitled to give this opinion less weight as a result.

The Appeals Council also refused to change the decision of the ALJ based on the IQ test results. A person whose IQ is between 60 and 69 is deemed to be totally disabled, regardless of his ability to do whatever work he has done in the past, if, in addition to the low IQ, the person has "a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(C). Mr. Anderson's score is not qualifying under section 12.05(C). Dr. Hurd found Mr. Anderson's IQ to be 71, and not between 60 and 69. While Mr. Anderson argues that a standard error range of three points should be factored into his score; the Secretary was entitled to rely on the plain language of the regulation.

In evaluating Mr. Anderson's ability to perform his past relevant work as a janitor, the ALJ properly noted that Mr. Anderson was "slightly restricted" by his mental problems in 1980. Given that Mr. Anderson worked at a steel mill for three years prior to 1980 lifting from 50 to 100 pounds and that his mental problems were limited to nervousness, as Dr. Jennings found, substantial evidence supports the finding of the ALJ that Mr. Anderson retained the ability to work as a janitor.

## Conclusion

Given the applicable standard of review, the decision of the district court granting summary judgment in favor of the Secretary must be affirmed.

AFFIRMED.