Charles PRINCE, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.

No. 90–2689.

United States Court of Appeals, Seventh Circuit.

Argued April 24, 1991.

Decided June 3, 1991.

istrative law judge (ALJ) that he could perform his past relevant work as a heavy equipment operator. He also argues that the decision was contrary to several of the Secretary's rulings. For the reasons stated below, we reverse and remand.

## I. FACTS

Prince was born on March 29, 1934 and has an eighth grade education. For two and one half weeks in the 1970's, he drove a grain dump truck during harvest time. From 1968 to 1985, he worked as a heavy equipment operator and mechanic, running earth moving machines called a road scraper and a road grader. For the heavy equipment job, he had to climb up onto the machinery to get inside and had to use hand and foot controls to operate the machines. These machines vibrate a great deal.

As a mechanic on this equipment, Prince had to lift up to 105 pounds. He also had to bend, stoop and crawl under the machinery and use hand tools. He had to leave the heavy equipment job in December 1985 because of rheumatoid arthritis which caused swelling in his neck, wrists, shoulders, hips, knees and feet. He also had soreness in his back and problems with gout.

He tried working again from time to time. In 1986, he worked one day running a road scraper, but he could not get his hands up high enough on the controls to dump the dirt. Also the floor boards of the machine were six feet off the ground, making it difficult to get on and off. When his gout flared up, he could not continue working. In 1987, he drove a road grader for one month. He worked just three or four days a week, sometimes for only four or five hours. Again he quit after his arthritis became so aggravated that he could not get back on the machine.

At a hearing before the ALJ on July 8, 1988, Prince testified that he has trouble walking due to stiffness in his ankles and knees from the arthritis and gout. The swelling causes him to walk like a "big penguin", and he has to walk up stairs

Larry D. Gibson, Mt. Vernon, Ill., for plaintiff-appellant.

Laura J. Jones, Asst. U.S. Atty., Office of the U.S. Atty., Benton, Ill., Denise McDuffie Martin, Dept. of Health and Human Services, Region V, Office of the Gen. Counsel, Chicago, Ill., for defendant-appellee.

Before COFFEY, EASTERBROOK and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Plaintiff Charles Prince appeals from a summary judgment for defendant, the Secretary of Health and Human Services. The Secretary denied Prince's request for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for disability benefits under the Supplemental Security Income program in Title XVI of the Act, 42 U.S.C. §§ 1381, 1382c. On appeal, Prince contends that there was not substantial evidence in the record to support the decision of the admin-

sideways because of stiffness in his ankles. He can stand in one location for five to ten minutes before his lower back starts hurting.

He also has problems gripping with his hands. For example, he cannot go to the bathroom alone because he cannot pull his shorts down without assistance. His house does not have a shower and he cannot sit down in the bathtub, so his wife has to wash him while he stands. He also testified that he dropped a two-liter bottle of soda the day before the hearing because he could not hold onto it. Although he tries to walk, he ends up spending approximately half of the day in bed or laying on the couch. The rest of the time is spent sitting with his feet up. Until the hearing, he had not worn a pair of shoes for almost a year. His wife testified and corroborated his testimony.

The medical evidence showed that Prince had experienced numerous dislocations of his right shoulder starting in 1951. In October 1987, he underwent arthroscopy and surgical repair of the joint with staples. The medical report from the orthopaedic surgeon, Dr. James Chow, states that Prince was able to move his right elbow and wrist joint quite freely and moved his fingers well. A follow-up x-ray showed that the staple had maintained its proper position. Chow noted that Prince should avoid raising his arms above his head.

Dr. Robert Parks examined Prince in January 1988. Prince complained to Parks of gout and rheumatoid arthritis affecting primarily his ankles, fingers and wrists. Prince told Parks that he has flare-ups every one to four weeks. On good days—about two a week—he can walk extensively, while on bad days he is confined to using a walker or cane. Parks diagnosed gout and arthritis, both in remission. He noted that Prince could ambulate on his tiptoes and on his heels without problem and could heel-to-toe walk without problem. Except for the right shoulder, Prince had a full active and passive range of motion. Parks found no hot, red or tender joints or spindle shaped swelling of the hands, but

he did note that Prince had very little grip in his hands.

In February 1988, Dr. G. White reviewed the medical records and made a residual functional capacity (RFC) assessment. He found that Prince could lift a maximum of fifty pounds and carry 25 pounds. He found Prince limited to occasional overhead reaching. He stated tht Prince could stand and walk a total of six hours in an eight hour work day and that he should avoid cold damp settings. Dr. Trilo Pardo, a state agency physician, agreed with White's functional capacity assessment. A third reviewing physician, Dr. John Holman, found that Prince was not disabled. A fourth reviewing physician, Dr. D. Widicus, came to the same conclusion as Dr. Holman.

In April 1988, Prince's treating physician, Dr. Anderson, reported that Prince had rheumatoid arthritis, gout and a chronic dislocated shoulder. He found swelling in the joints of Prince's hands, wrists and heels, and noted that Prince experienced pain in these areas. The swelling caused deformity in the hands, but not enough to impair Prince's ability to work as a heavy equipment operator. Anderson found no evidence that Prince's range of motion in his joints was limited. He stated that Prince limped on occasion from pain but was not required to use walking aids.

At the hearing, Dr. Brockman Schumacher, a vocational expert with a Ph.D. in clinical psychology, classified Prince's past work as semi-skilled and ranging from medium to heavy in its exertional level. He rated the work as a heavy equipment operator and mechanic as heavy. He classified as light work Prince's jobs as a grader in June of 1987, a scraper for one day in 1986, and a dump truck driver for two-and-one-half weeks during the 1970's. Assuming that Prince could not lift his arm above his head and is limited to light work, Schumacher thought that Prince could still drive a dump truck. But based on Prince's testimony, he opined that Prince could not perform any job because of his problems using the bathroom, sitting and standing.

The ALJ recommended denying benefits on August 23, 1988. He found that Prince's impairments did not meet the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and found that Prince's subjective complaints were not credible. He credited Dr. Anderson's conclusion that Prince's grip was normal over Dr. Park's conclusion that Prince had reduced grip strength. On the other hand, the ALJ discounted Anderson's report of swelling because it was not present in the other examinations. He concluded that Prince's impairments do not prevent him from performing his past relevant work as a mechanic, a grader operator, a scraper operator or a dump truck driver.

Prince supplemented the record before the Appeals Council with a more recent report by Anderson—the treating physician—regarding Prince's condition. This report was made after an examination which followed the ALJ's decision. Anderson noted that Prince had

[an] increasing problem with the rheumatoid arthritis. It is affecting both hips and both knees as well as both feet in the lower extremities. The upper extremities are affected in the elbows and the hands. The patient is losing his ability to come from sitting to standing, especially from lower chairs.

Anderson recommended physical therapy "[i]n view of this patient's increasing loss of mobility due to pain and joint limitation." The Appeals Council considered this new evidence but denied Prince's request for review.

After Prince filed a complaint in district court, Magistrate Frazier issued a Report and Recommendation. The magistrate discounted Prince's argument that the ALJ failed to determine Prince's RFC or make findings about the physical and mental demands of Prince's past jobs in accordance with Social Security Ruling (S.S.R.) 82–62, because the ALJ in fact focused on these

factors when he discussed Prince's ability to grip, climb, sit and stand at the hearing. The magistrate agreed with Prince that his work as a dump truck driver did not qualify as prior relevant work due to its short duration and that the ALJ failed to make a comparison of Prince's functional abilities—he could lift fifty pounds—with the demands of the mechanic's position—which required that he lift 100 pounds. These errors were harmless according to the magistrate because Prince was still capable of returning to his prior work as a heavy equipment operator.[1] Judge Foreman adopted the magistrate's report and affirmed the denial of benefits.

One month after the district court's decision in August 1990, the Secretary granted a subsequent application for disability benefits retroactive to April 1989 for disability insurance benefits and April 1990 for Supplemental Security Income. This subsequent decision places the onset date of disability at August 24, 1988—just one day after the decision of the ALJ. In January 1991, Prince made a motion before the district court to supplement the record and remand or reopen based on this information. Because this evidence—the notice of award—was not in existence at the time of the district court's decision, the motion was denied.

## II. ANALYSIS

 This court must affirm the decision to deny benefits as long as the findings of the Secretary are supported by substantial evidence and the Secretary applied the correct legal standards. 42 U.S.C. § 405(g). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). This court does not reweigh the evidence nor does it reconsider credibility determinations

1. The magistrate also noted that the ALJ's decision contained no discussion of Prince's non-medical evidence as required by Social Security Ruling 83–13, but concluded that where the objective medical evidence does not support the level of incapacity claimed, the court need not

discuss the non-medical evidence. Prince has challenged this conclusion on appeal, but our agreement with his other argument makes consideration of this claim unnecessary. *See Lauer v. Bowen*, 818 F.2d 636, 641 (7th Cir.1987) (*per curiam*).

made by the ALJ. *Anderson v. Sullivan,* 925 F.2d 220, 222 (7th Cir.1991).

When analyzing a claim for disability benefits, the Social Security regulations prescribe a five-step sequential inquiry to be followed in determining whether a claimant is disabled. The following steps are addressed in order: (1) is the claimant presently employed? (2) is the claimant's impairment severe? (3) does the impairment meet or exceed one of a list of specific impairments? (4) is the claimant unable to perform his or her former occupation? and (5) is the claimant unable to perform any other work in the economy? 20 C.F.R. §§ 404.1520, 416.920; *Pitts v. Sullivan,* 923 F.2d 561, 564 (7th Cir.1991). The ALJ decided this case at step four and found that Prince is able to perform his former occupation.

Prince argues that the ALJ erred in failing to follow the dictates of S.S.R. 82–62, which requires that the ALJ make specific findings regarding a claimant's capacity to do past relevant work. Specifically, he contends that the ALJ in this case failed to make any determination regarding Prince's RFC and necessarily failed to compare the RFC with the exertional requirements of his past relevant work. S.S.R. 82–62 provides that:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

The issue in this case is whether this ruling sets forth an affirmative duty on ALJs to make such findings or whether it is merely hortatory language.

■ Courts routinely accord considerable deference to an agency's interpretation of its own regulations. *Lauer v. Bowen,* 818 F.2d 636, 639 (7th Cir.1987) (*per curiam*); *United Fire Insurance Co. v. Commissioner of Internal Revenue,* 768 F.2d 164, 169 (7th Cir.1985). In commenting on the role of interpretive rulings such as S.S.R. 82–62, the Supreme Court stated in *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944),

> [w]e consider that the rulings, interpretations and opinions of the Administrator under this Act [Fair Labor Standards], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Id.* at 140, 65 S.Ct. at 164; *accord General Electric Co. v. Gilbert,* 429 U.S. 125, 141–45, 97 S.Ct. 401, 410–13, 50 L.Ed.2d 343 (1976). The Social Security regulations themselves provide that Social Security rulings are "binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that have been adopted by the Administration." 20 C.F.R. § 422.406(b)(1) (1990). Given these pronouncements, this court has stated that Social Security rulings in general and S.S.R. 82–62 in particular are binding on the Social Security Administration. *Lauer,* 818 F.2d at 640. The court also stated that such rulings are capable of being relied upon as precedent until they are either expressly superseded, modified, or revoked by later legislation, regulations, court decisions or rulings. *Id.*

■ The ALJ in this case failed to make any determination of Prince's residual functional capacity. Common sense and the Administration's own regulations and rulings oblige ALJs to make such determinations when issuing a decision. In fact, the RFC determination forms the crux of most of the ALJ's decisions regarding a claimant's ability to perform past relevant

work. Although this court reviews the ALJ's determination for substantial evidence, we are not in a position to draw factual conclusions on behalf of the ALJ. *See Anderson*, 925 F.2d at 222; *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir.1989). Until the Social Security Administration revokes S.S.R. 82–62, we will hold ALJs to the requirements set out in that ruling by the Secretary.

Not only did the ALJ fail to make any findings regarding the RFC of the claimant, he failed to determine whether Prince's RFC would permit him to return to his past occupation. The vocational expert, Dr. Schmacher, testified that the heavy equipment operator and mechanic job was rated as heavy. The district court assumed that Prince could perform the heavy equipment job but not the mechanic's job because the latter required that he lift over 100 pounds. But due to the fact that the ALJ failed to make any findings on Prince's RFC, we have no indication of whether Prince could in fact meet the exertional requirements of the job. Even if we assumed that he could not lift 100 pounds and could not perform the mechanic's duties, we still do not know either the exertional level of the heavy equipment operator job standing alone or Prince's capacity to perform that job. These determinations are particularly important in this case, where the Secretary in a subsequent application determined that Prince was in fact disabled on the day following the decision of the ALJ.

## CONCLUSION

We hold that the ALJ erred in failing to make a finding of fact as to Prince's RFC and a finding of fact that Prince's RFC would permit him to return to his past job as a heavy equipment operator. Accordingly the decision of the district court is REVERSED and the case REMANDED to the Secretary for the step four inquiry into whether Prince retained the ability to perform his past relevant work. We express no view on the outcome of that inquiry.