**George V. TSOUTSOURIS, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

**No. 2:94–CV–208–RL–2.**

United States District Court,
N.D. Indiana,
Hammond Division.

June 11, 1997.

---

James V. Tsoutsouris, Valparaiso, IN, for Plaintiff.

Carol Davilo, Dyer, IN, for Defendant.

## MEMORANDUM AND ORDER

SPRINGMANN, United States Magistrate Judge.

On April 22, 1994, the Secretary of Health and Human Services (Secretary) found that Medicare Part B overpaid the Plaintiff and denied the Plaintiff's claims to waiver of the overpayment and limited liability of the overpayment. The Plaintiff filed suit in this Court seeking judicial review of both the finding of overpayment and the denial of the Plaintiff's waiver and limited liability claims. Because the decision of the Administrative Law Judge (ALJ) was supported by substantial evidence, the Court GRANTS the Defendant's Motion for Summary Judgment and AFFIRMS the decision of the ALJ in all respects.

### I.

Pursuant to Section 205(g) of the Social Security Act, the Plaintiff files suit to challenge the decision of the ALJ finding that he was overpaid by Medicare Part B and denying his request to waive his recovery of the overpayment or limit his liability for the overpayment. 42 U.S.C. § 1395ff(b)(*l*) (Incorporating 42 U.S.C. § 405(g) by reference.). Because both parties have consented to the authority of the Magistrate, this Court has authority to decide the case pursuant to 28 U.S.C. § 636(c). Judicial review of the ALJ's decision in this case is limited to determining whether the ALJ based his decision upon substantial evidence or legal error.

Regarding the "substantial evidence" standard, 42 U.S.C. § 405(g) states that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ..." "Substantial evidence" is an evidentiary standard that will not be met by a showing of a mere scintilla of proof. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). However, if "such relevant evidence that a reasonable mind

might accept it as adequate to support a conclusion is shown, the 'substantial evidence' standard is deemed met". *Id.*

■ In addition to the required showing of substantial evidence, this Court must also refrain from upholding the determination of the Secretary if the evidence before the Secretary was not properly evaluated because of an erroneous view of the law, or legal error. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *Marcus v. Califano*, 615 F.2d 23, 27 (2nd Cir.1979).

The Plaintiff claims that the ALJ did not base his decision on substantial evidence because a physician testifying at the hearing before the ALJ acknowledged that some of the treatments the Plaintiff rendered were appropriate. Furthermore, the Plaintiff claims that the ALJ committed legal error, a sentence four, § 405(g), remand, by misinterpreting the pertinent portions of the Social Security Act relating to overpayment of medical services, primarily 42 U.S.C. § 1395gg(c). In addition, the Plaintiff requests that additional evidence be allowed before the Court in the form of additional testimony regarding the medical necessity of the Plaintiff's unreimbursed treatments; in essence, the Plaintiff is requesting a sentence six remand, § 405(g), on the basis of new material evidence. Finally, the Plaintiff states that this Court could not properly grant the Defendant's Motion for Summary Judgment because there are factual issues present in the record that are to be determined by the trier of fact. This Court will take up each of the Plaintiff's contentions in turn.

## II.

Dr. George Tsoutsouris is a doctor and Medicare provider of podiatric medicine whose present practice is located in Hammond, Indiana. (R. 35, 421) In January 1991, Dr. Tsoutsouris was audited by Medicare Part B carrier, Blue Cross/Blue Shield of Indiana (Blue Cross). (R. 506) The Blue Cross audit consisted of a random examination of Dr. Tsoutsouris' debridement services from January 1, 1990 through June 30, 1990. (R. 506, 507) All services examined had been billed to Medicare Part B for reimbursement and afforded payment by Medicare. (R. 501) In the course of conducting its audit, Blue Cross chose fifteen claims submitted by Dr. Tsoutsouris' office for debridement of extensive eczematous or infected skin and reviewed Dr. Tsoutsouris' office notes and records regarding the treatment of each patient represented by the claims. (R. 506, 621) Following Blue Cross' review of Dr. Tsoutsouris' office records, a Blue Cross nurse auditor called Dr. Tsoutsouris in attempt at further clarification of the office records which were noted as largely illegible. (R. 465, 506) Upon completion of the audit process, Blue Cross issued a summary report stating that the review of Dr. Tsoutsouris' office records, in addition to the telephone conversation with Dr. Tsoutsouris, yielded a conclusion that his documentation was insufficient to substantiate a medical necessity behind his debridement claims. (R. 506) Furthermore, the Blue Cross summary report stated that Dr. Tsoutsouris' medical reports and subsequent clarifications failed to give any information regarding evidence of medical progress in his treatments, such as a description of the size or severity of the ulcers being treated, as required by the Medicare guidelines regarding the reasonableness and necessity of frequent foot-care treatments. (R. 26, 506, 587, 621) Accordingly, Blue Cross then calculated the overpayments that Dr. Tsoutsouris received from the fifteen claims, $798.94, extrapolated the result across the population from which the audit sample was chosen and requested a refund from Dr. Tsoutsouris for $3,035.82. (R. 506–07, 621)

After receiving Blue Cross' refund request, and timely paying the requested refund amount, Dr. Tsoutsouris requested that Medicare's Postpayment Medical Review review the refund determination. (R. 20, 498) The Medical Review affirmed the refund determination stating that, for purposes of establishing medically necessary services, all fifteen cases consisted of unacceptable documentation due to Dr. Tsoutsouris' illegible handwriting and frequent use of "as above." (R. 498) Dissatisfied with this review determination, Dr. Tsoutsouris then requested a hearing before a Medicare Hearing Officer to

re-review the refund determination. (R. 501) After reviewing the audit results, the Blue Cross hearing officer determined that the standing refund determination was correct, with the exception of a minor $.15 adjustment, and noted that the lack of any notation as to the size, depth, or drainage of the foot ulcers at the initial treatment or throughout follow-up treatments made an assessment of the healing process impossible and undercut any attempt to show medical necessity. (R. 503) Dr. Tsoutsouris then requested a hearing before the ALJ. (R. 20)

### A. Legal Framework

The Medicare program is set forth in Title XVIII of the Social Security Act. 42 U.S.C. § 1395 *et seq.* The Secretary of Social Security administers the Medicare program, which is a federally funded health insurance program for eligible persons who are aged, disabled, or have end stage· renal disease, through the Health Care Financing Administration (HCFA) of the United States Department of Health and Human Services. 42 U.S.C. § 1395 *et seq.* In administering Medicare, the Secretary contracts with private entities called "carriers," generally private insurance companies like Blue Cross, to aid in making determinations as to whether Medicare covers particular services. 42 U.S.C. § 1395u; *see also* 42 C.F.R. Pt. 421, Subpt. C.

The Medicare program is composed of two parts, Part A and Part B. Part B is of primary concern to this case. Part B is designed to function as a supplemental medical insurance program covering physicians' services, including Doctors of Podiatric medicine, and medical services not covered by Part A. 42 U.S.C. § 1395x(r), 42 U.S.C. § 1395j–1395w–4, 1395k, 1995x(s); 42 C.F.R. § 410.3.

▪ Generally, Medicare limits its coverage to expenses which are reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. 42 U.S.C. § 1395y(a)(1)(A); 42 C.F.R. § 411.15(k). To aid Medicare participants and courts in interpreting the boundaries of what is "reasonable and necessary" for purposes of Medicare cov-

erage, HCFA has issued a Medicare Part B Carriers Manual (MCM), a valuable resource embodying the agency's interpretation of its statute and, in accordance with *Chevron,* evoking considerable deference from this Court. *Chevron v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (a court must defer to an agency's interpretation of its statute which gives effect to unambiguous congressional intent and is a permissible construction of the statute). The MCM has direct application to the issues presented in this case.

In addition to limitations on coverage, Medicare has requirements governing the payment of claims. In particular, Medicare Part B specifies that it will not make any payment to a provider of services unless the provider has furnished the necessary information to determine the amounts due. 42 U.S.C. § 13951(e); 42 C.F.R. § 424.5(a)(6). Furthermore, with reference to podiatrists' claims, the MCM requires carriers to identify when a course of therapy requires more follow-up visits then are standard for a particular modality of care; the modality at issue here being the debridement of foot ulcers in diabetic patients. MCM § 4120.1. The MCM specifies that unless documentation of special medical circumstances justifying the extra visits is presented to the ·carrier, the carrier is to deny payments for the excess visits.· *Id.*

In a situation where Medicare has mistakenly overpaid a provider on behalf of an individual, Medicare will limit the provider's liability for the overpayment where the provider did not know, or could not reasonably be expected to know, that a Medicare payment could not be made for such items or services. 42 U.S.C. § 1395pp(a). However, a provider who has had a Medicare· payment denied in the past because he rendered services that were not reasonable and necessary, and who was notified that his requested payments were denied for these reasons, is deemed to have knowledge that Medicare is not covering such services. 42 U.S.C. § 1395pp(a). Furthermore, a provider is expected to know the services that are excluded from coverage and the documenta-

tion requirements to facilitate coverage if the provider acknowledges its receipt of HCFA notices, bulletins, or other directives from intermediaries, carriers, or PRO's. 42 C.F.R. § 411.406(e)(1).

In addition to this potential limitation on liability, Medicare provides an additional limitation on a provider's obligation to reimburse Medicare's overpayments to the provider. If the provider was "without fault" in causing or accepting any payment incorrectly made, and if adjustment or recovery of the overpayment would defeat the purpose of Title II or Title XVIII of the Act, or would be against equity and good conscience, the provider's liability for the overpayment is waived. 42 U.S.C. § 1395gg(c).

### B. The ALJ's Decision

On October 7, 1992, Dr. Tsoutsouris had a hearing before the ALJ. (R. 413) In addition to evaluating Dr. Tsoutsouris' testimony regarding his claims of sufficient documentation, the ALJ had the opportunity to review Dr. Tsoutsouris' affidavits which attested to the medical necessity of the debridement services he provided and supplied additional information regarding the debrided ulcers. (R. 419, 399) Furthermore, the ALJ was presented with the testimony of Dr. Julian Freeman, an impartial medical expert elicited for his expertise in Medicare rules and regulations and the application of those regulations to Medicare Part B. (R. 413, 414) Following Dr. Tsoutsouris hearing, the ALJ issued his decision on October 30, 1992 finding that Dr. Tsoutsouris was overpaid in the amount of $3,035.82. (R. 19, 30) Further, the ALJ found that pursuant to section 1879 of Title XVIII of the Social Security Act, Dr. Tsoutsouris liability for the overpayment was not limited, nor was Dr. Tsoutsouris eligible to waive Medicare's recovery of the overpayment because Dr. Tsoutsouris was not without fault in causing or accepting the overpayment. (R. 19, 29,30)

### III.

### A. Documentation of Medical Necessity

■ After reviewing the Plaintiff's complaint in conjunction with his allegations in his Response to Defendant's Motion for Summary Judgment, this Court has interpreted the Plaintiff to be making the argument that the ALJ did not have "substantial evidence" to find that Dr. Tsoutsouris' records contained inadequate documentation of medical necessity. With regard to the Plaintiff's complaint, the Plaintiff asserts that Dr. Freeman acknowledged that Dr. Tsoutsouris' treatment was appropriate and that reimbursement should have been made to Dr. Tsoutsouris. (Pl.Com.Para.9.) In essence, Dr. Tsoutsouris has interpreted Dr. Freeman's testimony to be a positive assessment of Dr. Tsoutsouris' documentation of medical necessity, and essentially, the Plaintiff posits that Dr. Freeman's positive assessment precludes the ALJ from having substantial evidence to find otherwise. With regard to the Plaintiff's assertions in his brief, Dr. Tsoutsouris maintains that he indeed provided adequate documentation of medical necessity and thus a finding of fault under § 1395gg(c) is inappropriate. (Pl.'s Resp. Df.'s Mot. Summ. J. at 3.) This Court disagrees with both the Plaintiff's assertion of adequate documentation and with the Plaintiff's implication that Dr. Freeman's testimony precludes the ALJ from having substantial evidence upon which to base his decision of inadequate documentation and subsequent finding of fault under § 1395gg(c). This Court will presently address the matter of whether "substantial evidence" existed to enable the ALJ to find inadequate documentation of medical necessity, leaving the discussion of the application of § 1395gg(c) fault provisions for section IIIB.

Dr. Julian Freeman is an impartial medical expert who was called by the ALJ for his expertise regarding Medicare rules and regulations. (R. 413) Dr. Freeman reviewed the records that Dr. Tsoutsouris submitted to the Medicare carrier for payment in each of the fifteen claims at issue in this case. (R. 22–25) Dr. Freeman then gave his opinion regarding a carrier's ability, when faced with Dr. Tsoutsouris' claims, to establish medical necessity warranting a payment to Dr. Tsoutsouris. (R. 22–25) Dr. Freeman found that in each of the fifteen cases a third party could not, without Dr. Tsoutsouris' additional

explanations and affidavits, determine that the services Dr. Tsoutsouris provided were medically reasonable and necessary so as to afford payment from Medicare. (R. 22–25)

■ It should be noted that the Plaintiff may have interpreted Dr. Freeman's testimony as favorable to his position because although Dr. Freeman stated that a third party's reading of Dr. Tsoutsouris' records would not support a finding of medical necessity in the cases of Cleo Walker and Blanche Potts, Dr. Freeman preceded to state that a third party would find that medical necessity existed after reviewing Dr. Tsoutsouris' after-the-fact affidavits regarding Cleo Walker and Blanche Potts. (R. 455–56, 460–61) However, Dr. Freeman's assessment in light of the affidavits does not compel a finding of medical necessity by the ALJ because ultimately the ALJ found the affidavits to be lacking in credibility, (R. 27), an assessment that reviewing courts must give great deference to. *Imani v. Heckler,* 797 F.2d 508, 511 (7th Cir.1986)("He [The ALJ] observed the witnesses directly, and those intangible, unarticulable elements that constitute "credibility" unfortunately leave no trace that can be discerned in this or any other transcript we must review ... [Therefore], unless the ALJ's assessment of the witness is patently wrong in view of the cold record before us, it must stand."); *see also Anderson v. Sullivan,* 925 F.2d 220, 222 (7th Cir.1991 ) (stating that the Secretary is entitled to give more weight to contemporaneous medical evidence than to medical opinions [after-the-fact affidavits] that are based upon hindsight).

■ In addition, Dr. Freeman stated that although Dr. Tsoutsouris' medical records alone would not enable a third party to make a determination that medical necessity existed in the cases of Hazel Kershaw and Emma MacIntosh, Dr. Tsoutsouris' testimony deciphering his illegible handwriting and explaining his abbreviations and "as above" references would permit a determination of medical necessity. (R. 448–49, 452–53) However, as in the cases of Mr. Walker and Mrs. Potts, this conclusion does not compel a finding of medical necessity because the issue that the ALJ was reviewing was whether Dr. Tsoutsouris provided sufficient documenta-

tion for a third party to find that the appropriate medical necessity existed to enable payment of Dr. Tsoutsouris' claims. (R. 438–39) The MCM § 4011.3, 5211 as discussed below states that illegible handwriting or the frequent use of "as above" may result in a providers' service being denied. (R. 601) Therefore, Dr. Tsoutsouris' documentation could quite conceivably be found to be "inadequate" due to its deviation from these standards and thus be determined to have provided insufficient documented evidence of medical necessity. Hence, Dr. Freeman's conclusion of · medical necessity after his review of Dr. Tsoutsouris' affidavits and explanatory testimony does not necessitate the ALJ's finding of *sufficient documentation* of medical necessity. The ALJ could properly chose to accord greater weight to the detailed regulations of the MCM, to Dr. Freeman's conclusions prior to Dr. Freeman's exposure to Dr. Tsoutsouris' explanations and affidavits, and to his own credibility assessments. *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986)(stating that although evidence may suggest a conclusion different from the one the ALJ came to, the ALJ's findings are still supported by substantial evidence if the findings are reasonable).

■ Moreover, the ALJ's opinion states that the ALJ disagreed with Dr. Freeman's testimony regarding the extensiveness of a provider's required documentation. (R. 26) Specifically, the ALJ stated that he chose to give greater deference to the carrier's interpretation of the law and regulations regarding the required specificity of a provider's documentation rather then Dr. Freeman's interpretation. (R. 26) In essence, the carrier insisted that the provider give enough specificity to allow the future healing progress of an ailment to be monitored; whereas, Dr. Freeman asserted that a provider's documentation need only give information regarding the beneficiaries condition at the immediate time of services rendered. (R. 26) Again, the ALJ's decision to give greater weight to the carrier's determination of the specificity of documentation rather than Dr. Freeman's is appropriate. *Stuckey v. Sullivan,* 881 F.2d 506, 509 (7th Cir.1989)(stating that the ALJ has the authority to assess medical evi-

dence and give greater weight to that which he finds more credible); *see also Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986)(recognizing that the substantial evidence standard presupposes that there is a zone of choice within which the Secretary may proceed without interference from the courts).

Therefore, because the ALJ's conclusion was supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, the ALJ has meet the substantial evidence standard and this Court will not disturb the ALJ's finding regarding the insufficiency of Dr. Tsoutsouris' documentation.

## B. Liability for Medicare Overpayments

Dr. Tsoutsouris' complaint states that the ALJ "misinterpreted the pertinent portion of the Social Security Act regarding 'overpayment for medical services.'" (Pl.Com. Para.8.) This claim amounts to an allegation that the ALJ committed a sentence four, § 405(g), legal error. *Marcus v. Califano,* 615 F.2d 23, 26–27, 29 (2nd Cir.1979) (finding that the Secretary's application of an erroneous legal standard constituted a § 405(g) legal error and warranted reversal of Secretary's decision); *Shalala v. Schaefer,* 509 U.S. 292, 310, 113 S.Ct. 2625, 2636, 125 L.Ed.2d 239 (1993) ("... a court's order to remand a case pursuant to sentence four of § 405(g) necessarily means that the Secretary committed legal error.") Although there are two provisions which are frequently discussed with regard to a provider's liability for Medicare overpayments, 42 U.S.C. §§ 1395pp(a) and 1395gg(c), and both provisions are addressed by the ALJ, Dr. Tsoutsouris only developed an argument for the provision regarding waivers of overpayment, 42 U.S.C. § 1395gg(c). Therefore, although this opinion dictates a discussion of § 1395gg(c) that entails a reference to § 1395pp(a), this Court will only address the ALJ's findings with respect to § 1395pp(a); whereas, this Court will review the ALJ's application of § 1395gg(c).

### 1. Waiver of Overpayment

In essence, 42 U.S.C. § 1395gg(c) provides a two pronged test to determine whether a provider's liability for an overpayment by Medicare is waived. 42 U.S.C. § 1395gg(c) states that when Medicare overpays a provider, Medicare's recovery of the overpayment will be waived if (1) the provider was without fault in accepting the incorrectly made payment and (2) the adjustment or recovery of the overpayment would defeat the purpose of Title II or Title XVIII of the Act, or the adjustment or recovery of the overpayment would be against equity and good conscience. The ALJ determined that Dr. Tsoutsouris did not meet the first part of the test, in essence that Dr. Tsoutsouris was not "without fault" in accepting Medicare's incorrect payments, and therefore, there was no reason to reach the second part of the test. (R. 27)

The ALJ based his decision regarding Dr. Tsoutsouris' fault upon two grounds. First, the ALJ noted that a determination of "fault" under § 1395gg(c) would appropriately entail utilizing some of the same rationale that the ALJ had engaged in when assessing whether § 1395pp(a) afforded Dr. Tsoutsouris any liability limitations. (R. 27) Section 1395pp(a) limits a provider's liability for an overpayment where the provider did not know, or could not reasonably be expected to know, that a Medicare payment could not be made for the services at issue. In applying § 1395pp(a), the ALJ found that Dr. Tsoutsouris should have known that the services he rendered would not be covered because Dr. Tsoutsouris was aware of, or should have been aware of, the various guidelines concerning proper documentation of treatments, such as those set out in the MCM §§ 4120.1, 4011.3, 5211, and his deviation from these guidelines. In pertinent part, these MCM sections state that 1) "Payment may be made for routine-type foot care ... when the patient has a systemic disease of sufficient severity ... the mere statement of a diagnosis does not of itself indicate the severity of the condition ..." (§ 4120.1(3), § 4120.1(3)(b)), that, 2) a "Physician's handwriting must be legible. If the reviewer is unable to read the writing, the service ... [may be] denied due

to the fact that the actual service cannot be verified" (§ 4011.3, 5211), and that 3) "Entries such as: 'As above,'" if frequent, may result in the service being denied (5211). (R. 584, 585, 601) The ALJ found that the hearing and medical records before him demonstrated that each of these guidelines were violated by Dr. Tsoutsouris. (R. 27, 444, 451, 453); *see also* MCM § 7103.1, *reprinted in* 2 Medicare & Medicaid Guide (CCH) § 11,-245.20H (stating "fault" exists when the physician does not submit documentation to substantiate that services billed to the program are covered).

In addition, in assessing the application of § 1395pp(a) to the Plaintiff's case, the ALJ had before him both Dr. Tsoutsouris' affidavits and Dr. Freeman's testimony as discussed above. To reiterate with respect to this evidence, the ALJ found that Dr. Tsoutsouris' affidavits lacked credibility, (R. 27), and that Dr. Freeman's testimony, when viewed in light of the MCM regulations (§ 4011.3, 5211), warranted a finding of insufficient documentation to support medical necessity. (R. 29)

As stated above, this Court has not been asked to review the ALJ's application of § 1395pp(a). Therefore, this Court accepts the ALJ's analysis and findings regarding limitations of liability under § 1395pp(a). As to the ALJ's application of § 1395pp(a) findings to § 1395gg(c) fault provision, this Court finds that the ALJ's determination under § 1395pp(a), that Dr. Tsoutsouris should have known that a Medicare payment could not be made, significantly and appropriately contributes to a finding under § 1395gg(c) that the provider was not "without fault" in accepting an overpayment by Medicare. As the Secretary's regulations make clear, "fault" depends on an evaluation of "all pertinent circumstances" including the recipient's "intelligence ... and physical and mental condition" and his good faith. 20 C.F.R. § 404.507; *Califano v. Yamasaki,* 442 U.S. 682, 696, 99 S.Ct. 2545, 2555, 61 L.Ed.2d 176 (1979). These "fault circumstances" would be appropriately determined through an application of § 1395pp(a). *See Id.* 442 U.S. at 682, 694 fn. 9, 696–97, 99 S.Ct. 2545 fn. 9, 2554, 2555, 61 L.Ed.2d 176. ("... the Secre-

tary must assess the absence of 'fault' and determine whether or not recoupment would be 'against equity and good conscience' ....[this] 'broad fault' standard is inherently subject to factual determination.").

The ALJ's second basis for a finding of fault under § 1395gg(c) also entailed a reference to the rationale of § 1395pp(a). Section 1395pp(a) states that a provider who has been notified that payment was denied in the past because his services were not reasonable and necessary is deemed to have knowledge that those services are not covered by Medicare. *See also* MCM § 7103.1, *reprinted in* 2 Medicare & Medicaid Guide (CCH) § 11,245.20E. (stating that one example of fault on the part of a physician is when "the physician billed for items or services which he should have known were not covered ..." and that the carrier will consider the physician to have known of policies and rules stating such if the carrier had given written notice of the policy or rule to the particular physician.). The ALJ found that Dr. Tsoutsouris was on notice regarding the need for more detailed documentation in order to meet Medicare's strict standards regarding claims of podiatrists. (R. 28) The ALJ pointed to a 1987 audit that the carrier, Blue Cross and Blue Shield, conducted on Dr. Tsoutsouris which concluded that Dr. Tsoutsouris was inadequately documenting his patients conditions and consequently owed $378.96 in overpayments. (R. 657) Although Dr. Tsoutsouris argued that the audit was never brought to his attention due to Medicare's mistake in identifying his brother, Dr. Thomas Tsoutsouris, for himself, the ALJ noted that the carrier's office memorandum explicitly stated that it had audited both Dr. Tsoutsouris and Dr. Thomas Tsoutsouris and that the carrier followed-up the audit with a letter referring to a necessary re-audit. (R. 28, 660) In addition to this evidence, the ALJ was presented with Dr. Tsoutsouris' testimony that he tried to keep up with the changes in the Medicare laws, (R. 426), and that he and his staff reviewed the Medicare bulletins that they receive approximately two or three times a year. (R. 426) Section 1395pp(a) states that a provider who acknowledges receipt of HCFA bulletins or notices is expected to know what services

are excluded from coverage. 42 C.F.R. § 411.406(e)(1). In light of these various forms of evidence, this Court finds that the ALJ reasonably determined that the evidence amounted to a form of actual notice and lack of "good faith," 20 C.F.R. § 404.507, such that a finding of fault under § 1395gg(c) for accepting Medicare's overpayment is appropriate.

Therefore, because this Court has examined whether the ALJ made any legal errors in its application of the fault provisions of § 1395gg(c) and finds that none have been made, this Court will not disturb the ALJ's finding of fault under § 1395gg(cc).

## C. New Material Evidence

 Dr. Tsoutsouris argues that he can produce favorable new evidence in the form of the corroborating opinions of Dr. Brinko and Dr. Benish. (Pl.'s Resp. Df.'s Mot. Summ. J. at 2–3.) This Court presumes that Dr. Tsoutsouris is thus requesting a remand since the law is clear that this Court cannot consider evidence outside of the certified record. *Papendick v. Sullivan,* 969 F.2d 298, 302 (7th Cir.1992), *cert. denied,* 506 U.S. 1050, 113 S.Ct. 968, 122 L.Ed.2d 124 (1993). The Supreme Court in *Melkonyan v. Sullivan,* 501 U.S. 89, 99–101, 111 S.Ct. 2157, 2164, 115 L.Ed.2d 78 (1991), recognized that Congress' creation of 42 U.S.C. § 405(g) provided the district courts with two different types of remands, a sentence four and sentence six remand. A sentence six remand is put at issue by Dr. Tsoutsouris' argument here. Under sentence six, the district court may order that additional evidence be taken before the Secretary on remand, but only if the claimant shows that there is new and material evidence that claimant has good cause for failing to incorporate into the record in a prior proceeding. 42 U.S.C. § 405(g). This Court reviews *de novo* whether additional evidence is new and material. *Sample v. Shalala,* 999 F.2d 1138, 1144 (7th Cir.1993).

With regard to the "newness" of Dr. Tsoutsouris' evidence, new evidence is evidence "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* (quoting *Sullivan v. Finkelstein,* 496 U.S. 617, 626, 110 S.Ct. 2658, 2664, 110 L.Ed.2d 563 (1990)); *see also Evangelista v. Secretary of Health and Human Services,* 826 F.2d 136, 139–40 (1st Cir. 1987) (stating that in order for information to be "new" under 42 U.S.C. § 405(g) it must be neither cumulative nor irrelevant. "If a losing party could vault the 'newness' hurdle of § 405(g) merely by retaining an expert to reappraise the evidence and come up with a conclusion different from that reached by the hearing officer, then the criterion would be robbed of all meaning. A wide variety of evidence would be 'new' in a ... world where there are ... as many opinions as there are experts."). Even though Dr. Tsoutsouris claims that Dr. Benish's schedule made Dr. Benish unavailable to present his corroborating affidavit before Dr. Tsoutsouris' motion deadline, December 2, 1996, this does not explain why Dr. Benish's opinion, Dr. Brinko's opinion, or any other podiatrist's opinion for that matter, were not in "existence or available" for introduction by Dr. Tsoutsouris' in his request for review by the Appeals Counsel in 1993. (R. 11) Further, Dr. Tsoutsouris states that the opinions of both Dr. Benish and Dr. Brinko will corroborate Dr. Tsoutsouris' assertion that his procedures were medically necessary and that his documentation revealed medical necessity. (Pl.'s Resp. Df.'s Mot. Summ. J. at 2–3.) However, these evaluations, while technically not in existence at the time of the earlier hearing, were "available" to the ALJ through Dr. Tsoutsouris' affidavits and testimony and through Dr. Freeman's testimony. Therefore, the ALJ's opinion was based on evidence encompassing the cumulative assertions of Dr. Tsoutsouris' "new" evidence. Therefore, Dr. Tsoutsouris has not shown that his evidence is "new" with respect to it being either previously unavailable or noncumulative.

The materiality issue has been treated as a separate test under 42 U.S.C. § 405(g). The Seventh Circuit has held that if there is a "reasonable possibility" that the claimant's new evidence would change the outcome of the ALJ's determination the materiality element of § 405(g) is met. *Sample,* 999 F.2d at 1144; *Godsey v. Bowen,* 832 F.2d 443, 444

(7th Cir.1987). As stated above, the ALJ was already presented with evidence respecting both the medical necessity of Dr. Tsoutsouris' procedures and the ability of a third party to determine medical necessity from a review of Dr. Tsoutsouris' documentation. Therefore, this Court finds that the materiality element of § 405(g) is not met because there is not a "reasonable possibility" that Dr. Tsoutsouris' new evidence would change the outcome of the ALJ's determination.

Finally, in addition to Dr. Tsoutsouris' evidence being neither new or material, Dr. Tsoutsouris did not demonstrate good cause as to why the "new and material" evidence was not presented to the Appeals Counsel. As discussed above, Dr. Tsoutsouris offers no impediment to his ability to obtain evidence in his favor besides the statement that Dr. Benish's "schedule and availability rendered him unable to provide this Court with an affidavit for this Motion's December 2 deadline." (Pl.'s Resp. Df.'s Mot. Summ. J. at 2–3.) This explanation does not demonstrate "good cause" within the meaning of 42 U.S.C. § 405(g). *Anderson v. Bowen,* 868 F.2d 921, 928 (7th Cir.1989 )(stating that "good cause" under 42 U.S.C. § 405(g) has not been demonstrated where "the reasons for pursuing additional evidence are apparent while the case is still subject to administrative review," and "there is no impediment to obtaining the evidence.").

Therefore, because Dr. Tsoutsouris fails to meet each element of a sentence six § 405(g) remand, this Court will not order a remand and the ALJ's decision stands without consideration of Dr. Tsoutsouris' additional evidence.

### D. Genuine Issues of Material Fact

██ Dr. Tsoutsouris has argued repeatedly throughout his brief that there are "genuine factual disputes before this Court ... [that are] a matter for the trier of fact." (Pl.'s Resp. Df.'s Mot. Summ. J. at 2–3.) Dr. Tsoutsouris has misunderstood the nature of these proceedings. The ALJ, acting pursuant to the Secretary, is the trier of fact and it is the ALJ's duty to weigh the evidence, resolve material conflicts, make findings of fact, and accordingly yield a determination in the case. *Richardson,* 402 U.S. at 400, 91 S.Ct. at 1426–27 (1971). Therefore, Dr. Tsoutsouris has already been before the trier of fact where facts and credibility issues were determined. This Court serves as a reviewing court over the Secretary's decisions, generally determining whether there was substantial evidence to support the Secretary's decision, whether a legal error has been made or whether new evidence warrants a remand. Accordingly then, the typical "genuine issue of material fact" standard that circumvents a summary judgment does not apply in cases such as this.

### IV.

Because the ALJ's decision was not based on legal error and was supported by substantial evidence, the Court now ORDERS that the Defendant's Motion for Summary Judgment be GRANTED and the decision of the Secretary denying the Plaintiff's claims of recoupment be AFFIRMED. Consistent with the determination, the Court further ORDERS that the Defendant's Motion to Strike Affidavit of Bruce J. Brincko, filed on December 12, 1996 be GRANTED.