Dolores J. DOMINGUESE, Plaintiff,

v.

Larry G. MASSANARI, Acting Commissioner of the Social Security Administration, Defendant.

No. 99–C–0596.

United States District Court,
E.D. Wisconsin.

Oct. 22, 2001.

David F. Traver, Traver Law Office, Milwaukee, WI, for Dolores Dominguese, plaintiff.

Penelope C. Fleming, United States Department of Justice (ED–WI), Office of the U.S. Attorney, Milwaukee, WI, for Social Security Administration, Commissioner of defendant.

### DECISION AND ORDER

ADELMAN, District Judge.

### I. PROCEDURAL BACKGROUND

Plaintiff Dolores J. Dominguese brings this action under 42 U.S.C. § 405(g) to obtain judicial review of a decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits and supplemental security income. Plaintiff applied for benefits in February 1997 alleging impairment due primarily to fibromyalgia commencing on July 27, 1996, and resulting in part from an automobile accident on that date. Plaintiff's application was de-nied. Plaintiff appealed and a hearing was held before an administrative law judge ("ALJ"). On April 20, 1998, the ALJ found that plaintiff was not disabled and denied her benefits. Plaintiff requested that the Appeals Council review the ALJ's decision but her request was denied, whereupon the ALJ's decision became the final decision of the Commissioner.

Plaintiff then commenced the present action and the matter was assigned to a magistrate judge. The parties, however, did not consent to the magistrate judge's jurisdiction; thus, the magistrate judge could only make a recommendation rather than issue a final decision. 28 U.S.C. §§ 636(b)(1)(B) and (C). He recommended that the decision of the Commissioner be affirmed. Plaintiff filed objections, and the matter is now before me.

### II. FACTS

#### A. Medical History

Prior to seeking disability benefits, plaintiff was employed as a part-time custodian by two churches. In 1992 or 1993 she was diagnosed with fibromyalgia, the symptoms of which include chronic neck and back pain. She also has a history of carpal tunnel syndrome, arthritis and sinusitis. She continued to work until the automobile accident. The accident, however, exacerbated the fibromyalgia and caused injuries to her upper body, head, neck, chest, left arm, lower back, and right leg as well as headaches and nausea.

On July 31, 1996, plaintiff was examined by her regular physician, Dr. Campbell because of neck and back discomfort and headaches. On August 5, based on Dr. Campbell's referral, she saw Dr. Tolson who noted that she was experiencing mild cervical neck strain. After seeing her on August 22, Dr. Tolson recommended physical therapy. Plaintiff saw Dr. Tolson

again on September 12, and he suggested that she continue with a home exercise program and not return to work. Plaintiff saw Dr. Tolson again in October and November and continued to complain of neck and shoulder pain. Dr. Tolson ordered an MRI which was unrevealing and recommended that plaintiff consult Dr. Jayaprakash.

In November, plaintiff saw Dr. Jayaprakash who recommended a course of physical therapy which plaintiff promptly commenced. In December, plaintiff saw both Drs. Tolson and Jayaprakash. On January 23; 1997, plaintiff was still experiencing pain, and Dr. Jayaprakash suggested a pain management program. However, plaintiff could not tolerate the program because of a flare-up of her fibromyalgia. On January 27, 1997, Dr. Tolson advised plaintiff's employers that she was presently unable to return to work and that upon her return she would be restricted to lifting ten pounds. As a result, plaintiff was discharged from her jobs.

Throughout 1997, plaintiff continued to complain of pain. She had appointments with Dr. Tolson in January, March, April, June, August and October. In June 1997, as the result of left shoulder pain, Dr. Tolson referred her to Dr. Trotter, an orthopedist. He indicated that her symptoms were consistent with fibromyalgia and suggested that she see a rheumatologist. Plaintiff's last visit to Dr. Tolson in the record was in January 1998 when she reported that she was still experiencing pain and headaches.

Dr. Tolson opined that she was limited with regard to physical activity, could lift ten pounds occasionally and only sit for four hours in an eight hour workday. He stated that she could stand or walk for two hours in an eight hour workday and that she could never perform a number of basic physical actions. His diagnosis was fibromyalgia, osteoarthritis and tendinitis. He stated that his conclusions were supported by x-rays and other objective data.

The Disability Determination Services physicians opined that plaintiff could perform light work.

**B. Testimony at Hearing**

At the hearing plaintiff testified that as a part-time custodian she set up tables and chairs, dusted, vacuumed, cleaned windows, cut grass, removed snow, raked leaves and pulled weeds. She said that she may have lifted fifteen pounds. She testified that after she was diagnosed with fibromyalgia in 1992 or 1993 her family helped her with certain tasks at her jobs including lifting tables and chairs, removing snow, spreading salt and climbing ladders.

She testified that after the automobile accident she was in constant pain and that she regularly takes medication to deal with the pain and does home exercises for her joints. She said that she could lift ten pounds, stand in place for six minutes, walk for forty-five minutes and sit for thirty-five to forty minutes mostly with a heating pad. She stated that she no longer does outside maintenance at her house and little inside cleaning. She testified that she did some crafts such as floral arrangements and painting pots. She said that she had trouble getting dressed because she couldn't reach her arm behind her, could not drive for more than forty minutes and did not believe she could be at a job site for a full work week.

Beth Hoynik, a vocational expert ("VE") testified that plaintiff's past work was unskilled, and that she had no transferable skills. In response to hypothetical questions from the ALJ, she said that there were light-level jobs in the national economy that plaintiff could perform. However, she also testified that if certain limitations

were assumed, including minimal ability to reach, plaintiff would not be able to work.

## III. APPLICABLE LEGAL STANDARDS, ALJ DECISION AND PLAINTIFF'S OBJECTIONS

### A. Standard of Review of Magistrate Judge Recommendation

■ Where a party timely objects to a recommendation of a magistrate judge, I must review de novo the aspects of the recommendation to which either party has timely objected, 28 U.S.C. § 636(b)(1)(c); *United States v. Raddatz*, 447 U.S. 667, 673–76, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), and may review de novo any other aspects as I see fit, *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir.1986). Plaintiff has timely objected, thus I review the magistrate judge's recommendation de novo.

### B. Manner of Proving Disability

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Social Security regulations prescribe a sequential five-step test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. Under this test the ALJ must determine: (1) whether the claimant is presently unemployed; (2) if so, whether the claimant has a severe impairment or combination of impairments; (3) whether any of the claimant's impairments are listed by the Social Security Administration as being so severe as to preclude substantial gainful activity, *see* 20 C.F.R. § 404; (4) if not, whether the claimant possesses the residual functional capacity ("RFC") to perform her past work; and (5) if not, whether the claimant is able to perform any other work in the national economy in light of the claimant's age, education and work experience. *Rucker v. Chater*, 92 F.3d 492, 494 (7th Cir.1996).

A claimant will automatically be found to be disabled if she makes the requisite showing at Steps One through Three. *Henderson v. Apfel*, 179 F.3d 507, 512 n. 3 (7th Cir.1999). If the claimant is unable to satisfy Step Three, however, she must then demonstrate that she lacks the RFC to perform her prior job(s). *Id.* If she makes this showing, the burden then shifts to the Commissioner to establish that the claimant can engage in some other type of substantial gainful employment. *Id.*

### C. ALJ's Conclusion

ALJ Arthur Schneider found that plaintiff was unemployed and had not engaged in substantial activity since July 27, 1996. He found that she had pain residual to a motor vehicle accident, neck, back and shoulder complaints, a history of fibromyalgia, and complaints of headache. At Step Three the ALJ found that plaintiff did not have an impairment or combination of impairments listed as disabling in the Social Security regulations. He found that plaintiff was probably unable to perform her past work as a custodian. The issue in the case arises from the ALJ's determination that plaintiff had the RFC to perform a full range of sedentary work and a limited range of light work, provided there was no lifting greater than 20 pounds on a regular basis and an opportunity to change position on occasion. This RFC would permit plaintiff to perform jobs that exist in a significant number in the national economy, including select cashier, assembly and custodial positions.

The ALJ based his decision that plaintiff was not disabled primarily on his conclusion that her complaint of severe and limiting pain and Dr. Tolson's opinion as to her

limitations were not credible. The ALJ stated his conclusion as follows:

This case essentially comes down to pain and credibility. While the undersigned believes that claimant does have some degree of pain and limitation, he has serious questions as to the extreme degree of pain which claimant has alleged. Frequency of visits to physicians have been intermittent at best and on those occasions where claimant has been seen objective testing and physical examination results have not been particularly impressive. While Dr. Tolson has been very supportive of claimant and offered a strong endorsement for claimant's disability, his opinions as to limitations are not consistent with the contemporaneous treatment notes. Claimant takes no strong pain medications, at least on a regular basis, and her household activities would be consistent with at least some degree of light work. In presenting various hypothetical questions to the vocational expert at the hearing, including a number of the limitations offered by Dr. Tolson, the vocational expert was still able to identify a significant number of jobs which such an individual would be able to perform including select cashier, assembly and custodial positions. Claimant's demeanor at the hearing did not suggest a person in the extreme pain which she has alleged, claimant moving the neck rather freely and also using the upper extremities without notable pain or discomfort.

(Tr. at 23.)

## D. Plaintiff's Objections

Plaintiff contends that the ALJ's negative assessment of her credibility was based on factors that did not justify it, including the alleged intermittency of her doctor visits, the ALJ's observation of her, and his understanding of the amount of housework that she did and the medications that she took. Plaintiff also argues that the ALJ improperly rejected the opinion of Dr. Tolson, that he inadequately justified his conclusion as to her RFC, and that the question that he addressed to the VE did not accurately reflect her condition.

## E. Standard of Review of ALJ Decision

 Under § 405(g), a district court may affirm, modify or reverse an ALJ's decision, with or without remanding the case for a rehearing. The court must review all the evidence in the record, and such review "must be more than an uncritical rubber stamp." *Delgado*, 782 F.2d at 82 (citation omitted). Nevertheless, the ALJ's findings of fact must be upheld if supported by substantial evidence. Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. *Binion ex rel. Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). In determining whether substantial evidence exists, the district court must take into account both evidence in support of a conclusion and anything that fairly detracts from its weight. *Young v. Secretary of Health and Human Services*, 957 F.2d 386, 388–89 (7th Cir.1992).

 The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact and determine the case accordingly. *Richardson v. Perales*, 402 U.S. 389, 399–400, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). A federal court may not decide facts anew, re-weigh the evidence, or substitute its judgment for that of the ALJ. *Binion*, 108 F.3d at 782. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the responsibility for that decision falls on the ALJ. *Id.* Conclusions of law are not entitled to deference, however, so if the ALJ commits an error of law such as incorrectly applying legal standards, reversal is required with-

out regard to the volume of evidence in support of the factual findings. *Imani ex rel. Hayes v. Heckler,* 797 F.2d 508, 510 (7th Cir.1986).

■ The ALJ must not only consider the important evidence, but his decision must demonstrate the path of his reasoning. The evidence in the case must lead logically to the fact-finder's conclusion. *Rohan v. Chater,* 98 F.3d 966, 971 (7th Cir.1996). Moreover, in cases where symptoms such as pain are alleged, the ALJ's assessment of the claimant's RFC must include a thorough discussion and analysis of the medical and non-medical evidence. Social Security Ruling (SSR) 96–8p. Even, if the plaintiff's complaint of pain

> is not supported by objective medical evidence ... the ALJ must obtain detailed descriptions of claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. [The ALJ] must investigate all avenues presented that relate to pain, including claimant's prior work record information and observations by treating physician's, and third parties. Factors that must be considered include the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for the relief of pain, functional restrictions, and the claimant's daily activities.

*Clifford v. Apfel,* 227 F.3d 863, 871–72 (7th Cir.2000) (quoting *Luna v. Shalala,* 22 F.3d 687, 691 (7th Cir.1994)).

Decisions of ALJs are highly regulated by the Commissioner's Regulations and Rulings. The Social Security Rulings, do not have the force of law, but are binding on ALJs. 20 C.F.R. § 402.35(b)(1); *Prince v. Sullivan,* 933 F.2d 598, 602 (7th Cir. 1991).

■ The credibility determinations of ALJs' "generally will not be overturned unless they are 'patently wrong.' " *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir.2000)). However, it is improper for a court to sustain an ALJ's credibility findings regarding pain based on incorrect information or illogical reasoning. *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996) ("we cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result"). But when an ALJ's credibility determination "rest[s] on objective factors .... rather than subjective considerations such as a claimant's demeanor, appellate courts have greater freedom to review the ALJ's decision." *Clifford,* 227 F.3d at 872 (quoting *Herron v. Shalala,* 19 F.3d 329, 335 (7th Cir.1994)) (internal quotation marks omitted).

■ Under Social Security Ruling 96–7p, the ALJ's determination regarding a claimant's credibility

> must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Id.* It is not sufficient for the adjudicator to make a single conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." *Id.* It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. *Zurawski,* 245 F.3d at 887. Once again, the ALJ must build an accurate and logical bridge from the evidence to the conclusion. *Clifford,* 227 F.3d at 872.

## IV. DISCUSSION

### A. ALJ's Negative Assessment of Plaintiff's Credibility

Plaintiff argues that in finding her complaints of pain were incredible, the ALJ relied on a variety of evidence from which he did not build an accurate and logical bridge to the conclusion he reached. I now assess the factors that the ALJ cited and his reasoning with respect to each factor.

### 1. Doctor Visits

■ In finding plaintiff's complaints incredible, the ALJ relied in part on her history of doctor visits, stating that "frequency of visits to physicians have [sic] been intermittent at best." (Tr. at 23.) Plaintiff argues for several reasons the inference drawn by the ALJ between her doctor visits and her credibility was improper. I agree.

In the first place, it is not entirely clear what the ALJ meant when he said that the "frequency" of plaintiff's visits was "intermittent." Frequency refers to how often she visited the doctor and intermittent refers to how regular her visits were. More importantly, however, plaintiff's doctor visits were neither intermittent nor infrequent. The record indicates that between July 1996, when the automobile accident occurred, and the beginning of 1998, plaintiff saw one or more doctors almost every month. In other parts of his decision the ALJ acknowledges as much. (*See* Tr. at 18.) ("Claimant continued with regular visits to Dr. Tolson over the course of 1997.") Further, between July 27, 1996 and December 31, 1996, she saw doctors at least nine times, not counting outpatient physical therapy appointments. (Tr. at 16–18.) The number of her visits thereafter only slightly diminished. She continued to see her primary doctor almost every month, and saw two additional doctors on several occasions. (Tr. at 17–18.) It is not clear from the ALJ's decision why he concluded that plaintiff's doctor visits were either intermittent or infrequent.

■ Moreover, it is not clear why the record of visits bore adversely on her credibility as to the severity of her pain. The ALJ concluded that her record of treatment indicated that she exaggerated her level of pain. However, the record contains no medical evidence concerning how regularly or how often a patient experiencing plaintiff's stated level of pain related to fibromyalgia and plaintiff's other afflictions would be expected to see a doctor. In the absence of such evidence, the ALJ made his own independent medical determination about the appropriateness of doctor visits. This determination was not within the ALJ's province to make. *See Scivally v. Sullivan,* 966 F.2d 1070, 1076 (7th Cir. 1992) ("Secretary cannot make his own independent medical determination about a patient"); *Herron v. Shalala,* 19 F.3d 329, 334 n. 10 (7th Cir.1994) ("an ALJ cannot make an independent medical finding"); *Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir.1990) ("The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them").

Fibromyalgia sufferers are supposed to engage in a comprehensive treatment course that includes pain management, exercise and referral to psychiatric sources. *See* Mark H. Beers, M.D. and Robert Berkow, M.D., *The Merck Manual of Diagnosis and Therapy* (17th ed.1999). The record indicates that plaintiff's program involved most of these elements, including regular medical treatment, pain management, and exercise. Thus, to the extent the ALJ based his credibility determination on plaintiff's record of doctor visits, his conclusion was not supported by substantial evidence and did not logically follow from the evidence.

■ Even assuming that the evidence warranted the ALJ's conclusion that plaintiff's doctor visits were intermittent or infrequent, the ALJ should not have drawn an adverse inference with respect to her credibility without making additional inquiry. Ruling 96–7p provides that,

[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.

Id. This ruling requires an ALJ to ask a claimant for an explanation or to search the record for an explanation before drawing an adverse inference as to the severity of the claimant's condition based on medical visits. In the present case, the ALJ inferred from plaintiff's record of doctor visits that she was exaggerating the severity of her symptoms without inquiring as to the reason. For this reason also, the ALJ used the evidence regarding medical visits improperly.

### 2. ALJ's Observations of Plaintiff

■ At the hearing, plaintiff testified that as the result of pain, she had problems bending, lifting, reaching behind her back to zip up her clothes, reaching overhead, twisting and sitting or driving a car for more than forty minutes. The ALJ rejected her complaints based in part on his observation of her at the hearing. He stated that plaintiff gave "no indication of pain with claimant readily pointing with her hand and sitting comfortably in the chair during the testimony. She was alert and did not appear to be desensitized by any pain medication or drugs." (Tr. at 21.) He also stated that "[c]laimant's demeanor at hearing did not suggest a person in the extreme pain which she has alleged, claimant moving neck rather freely and using upper extremities." (Tr. at 23.)

I accept the accuracy of the ALJ's observations because he was in a good position to make them. Observation can be very important in determining credibility. *Powers*, 207 F.3d at 436. Nevertheless, the ALJ did not build a logical bridge between his observations and his negative assessment of plaintiff's credibility; and it is not clear to me, based on the specific observations that he made, that such a bridge could have been built.

This case is unlike *Powers* where the plaintiff's statement that she could not sit for more than ten minutes without severe pain was obviously inconsistent with the ALJ's observation of her sitting at the hearing for far longer than ten minutes without signs of discomfort. *Id.*[1] In the present case, there is no inconsistency between plaintiff's complaints and the ALJ's observations. Plaintiff testified that she could sit for forty minutes, and the ALJ observed that she sat comfortably during the hearing, which lasted thirty-nine minutes. Thus, the ALJ's observation did not undermine plaintiff's statement about her own condition. Similarly, the ALJ observed that plaintiff was able to point her hand. However, the record does not indicate that plaintiff ever complained that pointing caused her pain. Thus again the observation did not contradict the com-

---

1. Even in *Powers* while giving credence to the hearing officer's observations, the Seventh Circuit expressed its discomfort with the "sit and squirm test." *Powers*, 207 F.3d at 436.

plaint. Additionally, the ALJ observed that plaintiff was alert and not desensitized by drugs; but there is no evidence that plaintiff ever said that lack of alertness or desensitization were problems. Finally, the ALJ noted that plaintiff was able to move her neck while testifying; but plaintiff did not complain that she could not move her neck while sitting and talking.

While I have no doubt that the ALJ accurately observed plaintiff's demeanor during the hearing, I see no logical relationship between his observations and his rejection of her complaints. The ALJ did not base his conclusion that plaintiff was exaggerating on a general observation that she was not a credible witness. In fact, he acknowledged that he believed that she had "some degree of pain and limitation." (Tr. at 23.) Rather, he made several specific observations that would have undermined statements by plaintiff to the contrary if she had made such statements. However, plaintiff made no such statements. Thus while I accept the truth of the ALJ's observations, the ALJ has not shown, as he is required to do, that there is an accurate and logical bridge from the evidence to his conclusion.

### 3. Household Activities

■ The ALJ also based his negative assessment of plaintiff's credibility on his conclusion that "her household activities would be consistent with at least some degree of light work." [2] (Tr. at 23.) However, once again the ALJ does not make clear how the evidence he cites in support of this conclusion actually justifies it. The ALJ found plaintiff not to be believable based in part on her testimony that she was "able to tend to various household activities ... [and] that she enjoyed making flower arrangements and painting pots. She also stated that she reads." (Tr. at 21.) It is not clear to me how this testimony supports the inference that plaintiff's complaints were exaggerated. Arranging flowers, painting pots and reading do not appear to be strenuous activities or activities inconsistent with the level of pain plaintiff described. The record contains no evidence to the contrary.

■ Moreover, in basing his decision on a portion of plaintiff's testimony regarding her housework, the ALJ made no mention of her other testimony on the same subject. Plaintiff testified, for exam-

2. 20 C.F.R. § 416.967 states:

To determine the physical exertion requirements of work in the vocational economy, we classify jobs as "sedentary," "light," "medium," "heavy," and "very heavy." These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor. In making disability determinations under this subpart, we use the following definitions:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities, If someone can do light work, we determine that he or she can also do sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

ple, that she could not carry more than one bag of groceries, that she had trouble doing dishes, that she could only vacuum and sweep for ten minutes, that her cooking was limited and that she was unable to reach out for her mail. When assessing credibility, the ALJ's decision must "be sufficiently specific to make clear ... the weight [given] to the individual's statements and the reasons for that weight." SSR 96–7p. The ALJ here did not even mention plaintiff's other relevant testimony, let alone give reasons for the weight he accorded it. As a result, his decision did not comport with the ruling's instruction, leaving reviewing courts to guess at his path of reasoning.

### 4. Medications

Ruling 96–7p requires that when assessing credibility regarding the presence of disabling pain, the ALJ "must consider" a variety of factors including "the type, dosage, effectiveness, and side effects of any medication the individual receives or has received for relief of pain or other symptoms." Id. The ALJ determined that plaintiff "takes no strong pain medications, at least on a regular basis" (Tr. at 25) and, although the opinion is not entirely clear, appears to have at least partially relied on this determination in rejecting plaintiff's credibility.[3] But the record indicates that plaintiff's doctors frequently prescribed and that plaintiff took a variety of medications to relieve pain. These medications include Hydrocone, Clonazeparn, Acetaminophen with codeine, Flexeril, Ambien and Midrin. Plaintiff took one or more of these medications continuously from the date of the accident until the date of the hearing.

Once again, the ALJ asserted a conclusion without showing how he reached it.

Of the various medications the plaintiff took, the only ones mentioned by the ALJ were Robitussin and Erythromycin, which were taken to alleviate a respiratory infection. He did not discuss the dosage, purpose or effect of any of the others. The ALJ did not make clear whether he considered the other medications, and on what basis he concluded that they were not strong or why he determined that plaintiff did not take them regularly. While the ALJ was not required to mention every drug that plaintiff used, his discussion of the subject was extremely limited particularly considering that he relied on what he regarded as plaintiff's minimal use of medications to diminish the credibility of her complaints of disabling pain. Because he makes only a conclusory statement, I am unable to determine whether he considered the "type, dosage, effectiveness and side effects" of these medications and why he reached the conclusion he reached. Once again, the ALJ did not build a logical bridge between the evidence and his conclusion.

### 5. Conclusion Regarding Credibility Evaluation

As the foregoing indicates, the ALJ rejected plaintiff's complaints of pain based on a variety of factors including doctor visits, her appearance, household work and medications. With respect to each of these factors, the ALJ relied on evidence that is less than substantial and failed to build a logical bridge between the evidence and conclusion.

### B. ALJ's Rejection of Treating Source Opinion

The ALJ rejected the opinion of Dr. Tolson limiting plaintiff to ten pounds of

---

**3.** He appears also to have relied on this determination in rejecting the limitations imposed on plaintiff by Dr. Tolson.

lifting on an occasional basis, limiting her sitting to four hours per day, her standing/walking to two hours, limiting her with respect to reaching, handling and pushing/pulling, and stating that plaintiff should not climb, balance, stoop, crouch, kneel or crawl. The reasons that the ALJ gave for rejecting Dr. Tolson's opinion were that it was not supported by "hard evidence" and that it was "not consistent with the contemporaneous progress notes." (Tr. at 22–23.)

█ Treating source opinions must be given special consideration.

If a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight.

SSR 96–8p. If the ALJ finds that the opinion does not warrant controlling weight, the ALJ may not simply reject the opinion. SSR 96–2p. He still must evaluate the opinion's weight by looking at the length, nature and extent of the plaintiff and physician's treatment relationship, the degree to which the opinion is supported by evidence, the opinion's consistency with the record as a whole, whether the doctor is a specialist, and "other factors." 20 C.F.R. § 404.1527(d). "in many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96–2p. Regardless of the weight the ALJ ultimately gives the treating source opinion, the ALJ must "give good reasons" for his decision. 20 C.F.R. § 404.1527(d)(2).

█ One of the bases for the ALJ's rejection of Dr. Tolson's opinion was his view that it was not well-supported by medically acceptable data. The ALJ here sought "hard evidence." However, plaintiff's principal alleged disabling condition was fibromyalgia. In most cases, there will be no objective evidence indicating the presence or severity of fibromyalgia. *Sarchet,* 78 F.3d at 307 (recognizing that no laboratory tests exist to determine the presence or severity of fibromyalgia). The symptoms are subjective and laboratory tests are of little value. *Id.* In light of the nature of the condition, the absence of hard evidence was not a "good" or even logical reason for rejecting Dr. Tolson's opinion or for according it lesser weight.

█ With respect to the ALJ's second justification for rejecting Dr. Tolson's opinion, i.e., that it was not consistent with contemporaneous notes, there are also several problems. First, the ALJ applied the incorrect legal standard. Pursuant to Ruling 96–8p, the ALJ must give controlling weight to the treating source's opinion if it is "not inconsistent" with other substantial evidence in the record, *accord.* 20 C.F.R. § 404.1527(d)(2); the opinion need not, as the ALJ stated, be "consistent" with the record. This is not merely a semantic issue. The "not inconsistent" standard presumes the opinion's prominence and requires the ALJ to search the record for inconsistent evidence in order to give the treating source's opinion less than controlling weight. Under the standard imposed by the ALJ, the opinion only has controlling weight if the record supports it. Second, the ALJ concluded that Dr. Tolson's opinion was inconsistent without either pointing to any evidence that the ALJ deemed inconsistent with any specific conclusion of Dr. Tolson's or explaining why he saw an inconsistency. Moreover, the ALJ did not mention evidence in the record consistent with Dr. Tolson's final report, one example being Dr. Jayaprakash's conclusion that plaintiff's pain was too substantial for her to participate in the work-

hardening program. I cannot assume that the ALJ gave this evidence the consideration required. *See Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir.1985) ("when the ALJ fails to mention rejected evidence the court must send the case back, for it cannot tell whether the ALJ fulfilled his statutory duty"); *Zblewski v. Schweiker,* 732 F.2d 75, 79 (7th Cir.1984) (same). For the foregoing reasons, I am unable to follow the path of the ALJ's reasoning in rejecting the opinion of the treating physician, and must remand the case for further consideration. *See Rohan,* 98 F.3d at 971.

## C. ALJ's RFC Finding and Hypothetical Questions to VE

The ALJ found that plaintiff had the RFC to perform sedentary and some light work because this work was "consistent with ... her household activities" and because the VE was able to identify a significant number of jobs under hypothetical scenarios that "includ[ed] a number of the limitations offered by Dr. Tollson [sic]." (Tr. at 23.) Plaintiff argues that the ALJ's analysis lacked a narrative discussion linking the evidence to the conclusion that plaintiff could perform light and sedentary work eight hours a day, five days a week.

Ruling 96–8p requires that the ALJ's assessment of RFC "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Id. In addition,

> the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e. 8

hours a day, for 5 days a week, or an equivalent work schedule).... The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Id. *See also* 20 C.F.R. § 404.1545(b).

■ In this case, the ALJ relied on plaintiff's household activities as evidence that she had the RFC to perform a limited range of light work, such as custodial, cashier and assembly positions. Once again, the ALJ's reasoning is inadequate. The ALJ did not explain to which of her rather limited household activities he referred and how they showed that plaintiff could do the lifting, carrying, walking, standing, pushing or pulling that even a limited range of light work requires. *See* 20 C.F.R. 416.967(b). And it is not clear to me that the record contains substantial evidence to support this conclusion.

Even if plaintiff's household activities show her ability to perform some degree of light work, the ALJ did not demonstrate how her activities show that she could work 8 hours a day, 5 days a week. Plaintiff testified that on a given day she prepares simple meals for herself, watches television, reads, does some crafts, and "on a good day," might vacuum and dust one room. This testimony does not appear consistent with full-time light work, and the ALJ did not explain how he reached this conclusion. I am unable to follow the path of his reasoning or determine whether important evidence was considered. Therefore, I must remand the case for further consideration.[4]

---

**4.** Plaintiff also contends that as the result of the ALJ's improper rejection of Dr. Tolson's opinion, the ALJ's hypothetical question to the VE, which failed to mention the limitations specified by Dr. Tolson regarding reaching and handling, did not accurately reflect plaintiff's condition and thus elicited in an unreliable answer. As discussed above, I have already determined that the ALJ's reasoning in rejecting Dr. Tolson's opinion was inadequate. Because the ALJ will have to more thoroughly explain both his evaluation of Dr. Tolson's opinion and his conclusion as to plaintiff's RFC on remand, I need not address plaintiff's argument here.

## V. CONCLUSION

For the foregoing reasons I decline to follow the recommendation of the magistrate judge; and

**IT IS HEREBY ORDERED** that the decision of the Administrative Law Judge is **REVERSED** and **REMANDED** to the Social Security Administration for action consistent with this opinion.