In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1525

TERRY A. PIERCE,

*Plaintiff-Appellant,*

*v.*

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 4157 — **Jeffrey N. Cole**, *Magistrate Judge.*

ARGUED NOVEMBER 19, 2013 — DECIDED JANUARY 13, 2014

Before POSNER, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Terry Pierce, a former waitress with back problems, seeks judicial review of the denial of her application for disability insurance benefits and supplemental security income. Because the ALJ's assessment of Pierce's credibility was flawed in several respects, we reverse and remand for further proceedings.

Pierce claims that she injured her lower back at her waitressing job in 2004 while moving cases of glassware. In too much pain to continue working, she quit her job and sought medical treatment. An MRI showed signs of disc degeneration, and she received chiropractic and electric-shock treatments to her back. She also took prescription pain medication. Her treating osteopathic physician, Dr. Jason Franklin, advised Pierce in 2005 that she should not lift more than 40 pounds, and after a few months, her back improved and she felt well enough to start a new job at a small café.

In March 2006 (her alleged onset date for disability), however, Pierce re-injured her back to the point that she could no longer sit or stand comfortably, and she had to quit her new job. The injury, she testified before the ALJ, disrupted her sleep, caused numbness in her legs, and prevented her from being able to sit, stand, lift, or bend for long periods. She added that she could not work for more than five hours without pain. Her doctors had trouble definitively identifying the cause of the pain. An MRI in 2006 revealed a small disc protrusion, mild disc bulging, and spinal arthritis, but no neural compression. She received chiropractic treatments, physical therapy, cold and hot therapy, and both prescription and over-the-counter pain medication. Her chiropractor, Manuel Duarte, advised her in 2006 not to return to work because of her lumbar injury, and he opined that her ability to bend, stand, and stoop had been reduced by more than 50 percent.

Pierce stopped treatment in 2006, she testified, because she had no insurance, but she continued to do at-home therapy and took pain medication. In late 2006 she took a job working mornings as a cashier in a high school cafeteria. Still unable to

make ends meet, she also worked some evenings at a Subway restaurant, but she was fired from that job after back pain forced her to call in sick too many times.

In 2007, two consulting physicians for the agency found that Pierce's pain was not disabling. First, Pierce received a consultative physical examination from agency examiner Dr. ChukwuEmeka Ezike, who noted that her spinal range of motion was normal with only mild pain, but also observed that she had "chronic low back pain," could not squat without support, and had a "guarded gait." Second, Dr. Francis Vincent assessed Pierce's residual functional capacity based on her medical records. Dr. Vincent found that Pierce could lift 50 pounds occasionally and 25 pounds frequently, and could stand or walk for six hours in an eight-hour work day and sit for six hours over the same period.

In 2008 Pierce continued to seek treatment by visiting a physical therapist who observed that she had mild lumbar tenderness, only 60 percent strength in her left side, and a 50 percent reduction in her ability to bend to the left.

At her administrative hearing in 2009, Pierce elaborated on the difficulties that her back pain caused. She testified that she suffered regular leg numbness even though she could sit and stand at work as needed, and that she could not get through an entire work day pain-free. She explained that she would be "crunched over" at the end of a "rough" day with lots of moving and lifting, and she used heat and ice to alleviate her pain after she returned home. She still experienced pain at her cafeteria job even though she did no heavy lifting or carrying. As for her daily activities, Pierce explained that she could

perform basic chores slowly and babysit her grandchildren as long as she could sit down regularly and did not have to pick them up.

A vocational expert was asked about the types of jobs that would be available to a person of "advanced age" (55 years or older under a Social Security regulation, 20 C.F.R. § 404.1563(e)) who was limited to light work with only occasional bending, stooping, and twisting, and who needed the option to alternate between sitting and standing. The vocational expert testified that such a person would be able to work full-time as a cashier or information clerk—options particularly viable for Pierce, in the vocational expert's view, because of the customer service skills she had acquired in her previous jobs.

The ALJ concluded that Pierce was not disabled under the Social Security Act. Applying the requisite five-step analysis, see 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), the ALJ found (1) that Pierce had not engaged in substantial gainful activity since the alleged onset date; (2) that her back problems constituted a severe impairment; (3) that her back problems did not equal a listed impairment that would be deemed disabling without further inquiry; (4) that she had the residual functional capacity to perform light work except that she could only occasionally bend, stoop, and twist, and would need the option to sit or stand at will; and (5) that her age, education, work experience, and residual functional capacity allowed her to work in occupations with jobs existing in significant numbers, such as a cashier or information clerk.

The ALJ found that Pierce's statements about her symptoms were not credible because they conflicted with several doctors' objective assessments of her pain, including a normal electrodiagnostic test and an MRI that showed no neural compression. The ALJ also gave little weight to chiropractor Duarte's opinions because they were unsupported by objective evidence.

The Appeals Council denied review, and Pierce sought judicial review. In the district court, the magistrate judge presiding by consent granted summary judgment for the Commissioner. The judge focused on the ALJ's credibility determination. He acknowledged that the ALJ had used often-criticized boilerplate in discounting Pierce's statements as "not credible to the extent that they are inconsistent with the above residual capacity assessment." But the judge found that this sort of boilerplate did not invalidate the adverse credibility finding because the ALJ substantiated his decision by citing ample evidence that undermined Pierce's alleged symptoms.

On appeal Pierce argues that the ALJ wrongly discounted her credibility by drawing inappropriate inferences from the lack of objective support for her claims, misstating her testimony, neglecting to discuss her attempts to work full-time, and improperly relying on Dr. Franklin's evaluation of her ability to lift weights before the second injury that actually forced her to stop working.

An ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results. See SSR 96-7p(4); *Bjornson v. Astrue*, 671 F.3d 640, 646 (7th Cir. 2012); *Myles v.*

*Astrue*, 582 F.3d 672, 676–77 (7th Cir. 2009); *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). Pain can be severe to the point of being disabling even though no physical cause can be identified, though in such cases, the claimant's credibility becomes pivotal. *E.g.*, *Sims v. Barnhart*, 442 F.3d 536, 537–38 (7th Cir. 2006); *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006); *Carradine*, 360 F.3d at 753–54. Also, the lack of objective support from physical examinations and test results is still relevant even if an ALJ may not base a decision solely on the lack of objective corroboration of complaints of pain. See 20 C.F.R. § 404.1529(c); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ found that Pierce had been "fairly consistent in terms of her complaints regarding her symptoms and their limiting effects," but the ALJ ultimately discounted her credibility. The ALJ's credibility finding included a familiar statement: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity." When there is no further expla-nation, we have often criticized such language as "meaningless boilerplate." See *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013); *Bjornson*, 671 F.3d at 644–45; *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). Without further explanation, the boilerplate fails to specify which statements are not credible. *Martinez v. Astrue*, 630 F.3d 693, 695 (7th Cir. 2011). In this case, though, the ALJ followed the boilerplate conclusion with a detailed explanation of the evidence and his reasoning about credibility, so the boilerplate phrases are not the problem. The problem is that the explanation shows that the ALJ's credibility

finding misstated some important evidence and misunder-stood the import of other evidence.

First, the ALJ inappropriately rested his credibility determination too heavily on the absence of objective support for Pierce's complaints without digging more deeply. See SSR 96-7p(4); *Bjornson*, 671 F.3d at 646; *Myles*, 582 F.3d at 676–77; *Carradine*, 360 F.3d at 753. That was particularly erroneous because the ALJ knew that her lack of insurance prevented her from seeking medical attention and thus could explain her lack of objectively quantifiable test results. (AR 48–49, 63). In its brief to this court, the government took this argument a step further, pointing to Pierce's limited treatment history itself as proof that her condition was not serious. Not only is the government's argument an impermissible post hoc rationale, see *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009), but it also erroneously implies that an ALJ can rely on an uninsured claimant's sparse treatment history to show that a condition was not serious without exploring why the treatment history was thin. SSR 96-7p; *Myles*, 582 F.3d at 677; *Craft v. Astrue*, 539 F.3d 668, 678–79 (7th Cir. 2008); *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1097 (E.D. Wis. 2001).

The ALJ's credibility assessment was also flawed for other reasons. First, the ALJ erred by concluding that Pierce should be able to work full-time because she "often" worked for longer than five hours per day. But in fact she testified that she worked a six-hour day only occasionally. An occasional six-hour day is a far cry from full-time work day-in and day-out. Second, the ALJ erred by overlooking Pierce's unsuccessful attempt to hold a second job at a Subway sandwich shop. In a

different context, the ALJ noted later in the opinion that the Subway job was at a medium exertional level and thus beyond Pierce's residual functional capacity. But a claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms. Finally, the ALJ made a basic factual error by justifying his finding in part on Dr. Franklin's 2005 assessment that Pierce could lift up to 40 pounds. Dr. Franklin made that assessment one year before Pierce's second back injury—the injury that Pierce says actually disabled her. Her physical abilities a year before the alleged onset date therefore tell us little if anything about the credibility of her later complaints of disabling pain.

We disagree with one of Pierce's challenges to the ALJ's credibility assessment. Pierce argues that the ALJ did not accord sufficient weight to the opinions of her treating chiropractor, Duarte. The ALJ did not err in this respect. For purposes of social security disability determinations, a chiropractor is not an "acceptable medical source," cannot offer "medical opinions," see 20 C.F.R. § 404.1513(a); S.S.R. 06–3p, and is not considered a "treating physician," see *Cole v. U.S. R.R. Ret. Bd.*, 182 F.3d 921 (7th Cir. 1999) (distinguishing chiropractors from "treating physicians"); see also *McDade v. Astrue*, 720 F.3d 994, 999 (8th Cir. 2013). An ALJ may consider a chiropractor's opinions, of course, but the weight they will be given will depend on a number of factors, including the degree to which they are supported by objective evidence. 20 C.F.R. §§ 404.1527(c)(3), 416.913(d)(1); S.S.R. 06–3p; *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009). The ALJ gave sufficient

consideration here by summarizing Duarte's findings and noting that they were not corroborated by any objective evidence in the record. Pierce has pointed to no objective evidence from any other medical source that would support Duarte's opinions.

The ALJ's flawed credibility assessment cannot be deemed harmless. An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006); see also *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). The ALJ did not provide a justification for his decision beyond that in his credibility finding, and Pierce's account of her pain was not so contradicted by medical evidence as to be incredible. Nor can we be sure that the ALJ would have reached the same conclusion about Pierce's credibility if the information he considered had been accurate. See *McKinzey*, 641 F.3d at 892; *Spiva*, 628 F.3d at 353.

We need not address Pierce's remaining arguments, but on remand the determination of residual functional capacity and the questions to the vocational expert will need a fresh look after a new evaluation of the credibility of Pierce's complaints of disabling pain. The judgment is VACATED and the case is REMANDED to the Commissioner for further proceedings consistent with this opinion.